UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PETER C.,[1]                                    )
                                                )
             Plaintiff,                         )
                                                )
      v.                                        ) Case No.: 1:17-cv-02382-RLY-DML
                                                )
NANCY A. BERRYHILL, Deputy                      )
Commissioner for Operations, Social            )
Security Administration,                        )
                                                )
             Defendant.                         )

Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. §

636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its

appropriate disposition.  As addressed below, the Magistrate Judge recommends

that the District Judge REVERSE and REMAND the decision of the Deputy

Commissioner for Operations of the Social Security Administration

("Commissioner") that plaintiff Peter C. is not disabled.

---

[1]     To protect privacy interests of claimants for Social Security benefits and consistent with a recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions. The plaintiff will therefore be referred to by his first name in this Report and Recommendation.

## Introduction

Plaintiff Peter C. applied in November 2013 for Disability Insurance Benefits

under Title II of the Social Security Act, alleging he has been disabled since June

26, 2013.  Acting for the Commissioner of the Social Security Administration

following a hearing on March 9, 2016, administrative law judge Shane McGovern

issued a decision on May 4, 2016, that Peter is not disabled.  The Appeals Council

denied review of the ALJ's decision on May 10, 2017, rendering the ALJ's decision

for the Commissioner final. Peter timely filed this civil action under 42 U.S.C. §

405(g) for review of the Commissioner's decision.

Peter argues that several errors in the Commissioner's decision warrant

remand.  The overall tenor of his arguments is that his medical condition changed

so dramatically from the time his application was reviewed by agency physicians in

April and June 2014 that the ALJ was required to obtain expert medical opinion

before determining that his impairments did not satisfy a listing and before

determining an appropriate RFC.

The court will first describe the legal framework for analyzing disability

claims and the court's standard of review, and then address Peter's specific

assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show he is unable to "engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 423(d)(1)(A). Peter is disabled if his impairments are of such severity that

he is not able to perform the work he previously engaged in and, if based on his age,

education, and work experience, he cannot engage in any other kind of substantial

gainful work that exists in significant numbers in the national economy.  42 U.S.C.

§ 423(d)(2)(A).  The Social Security Administration has implemented these

statutory standards by, in part, prescribing a five-step sequential evaluation

process for determining disability.  20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful

activity; if he is, then he is not disabled.  Step two asks whether the claimant's

impairments, singly or in combination, are severe; if they are not, then he is not

disabled.  A severe impairment is one that "significantly limits [a claimant's]

physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  The

third step is an analysis of whether the claimant's impairments, either singly or in

combination, meet or equal the criteria of any of the conditions in the Listing of

Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing of

Impairments includes medical conditions defined by criteria that the SSA has pre-

determined are disabling, so that if a claimant meets all of the criteria for a listed

impairment or presents medical findings equal in severity to the criteria for a listed

impairment, then the claimant is presumptively disabled and qualifies for benefits.

20 C.F.R. § 404.1520(a)(4)(iii).

se

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and RFC; if so, then he is not disabled.

The claimant bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his vocational profile and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

**Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I.     The ALJ's Sequential Findings

Peter was born in 1978, was 35 years old as of his alleged disability onset date in June 2013, and was 38 years old at the time of the ALJ's decision. Peter had worked full-time in property management for about three years immediately preceding his onset date. His work history also includes full-time work in retail management and at a motel. Peter testified that he stopped working after he had a "full-blown seizure" followed by a stroke in June 2013, which corresponds to his alleged onset date. (R. 388).

At step one, the ALJ found Peter had not engaged in substantial gainful activity since his alleged onset date. At step two, the ALJ identified the following as severe impairments: cerebral vascular incident, partial idiopathic epilepsy, lupus, degenerative disc disease with history of fusion, sleep apnea, hearing loss of the

right ear, ostomastoiditis of the right side,[2] carpal tunnel syndrome, and obesity.  At

step three, the ALJ analyzed whether Peter's impairments satisfied listings 1.04

(disorders of the spine), 2.10 (hearing loss), 3.10 (sleep-related breathing disorders),

11.02 (epilepsy), and 14.02 (lupus), and found none had been met.

The ALJ next determined Peter's residual functional capacity (RFC) for

purposes of conducting the required analysis at steps four and five. He restricted

Peter to sedentary work as defined at 20 C.F.R. § 404.1567(a), and the use of a cane

while walking or standing.  The ALJ also included various postural, climbing,

fingering, and environmental restrictions.  (R. 26).

The ALJ found Peter cannot perform his past relevant work, all of which was

more demanding than his functioning allows.  The ALJ then concluded, based on

the testimony of a vocational expert, that Peter is capable of the following work

existing in significant numbers in the economy: Order Clerk, Charge Account Clerk,

and Call-Out Operator.  Accordingly, he found at step five that Peter was not

disabled.

## II.     Peter's Assertions of Error

Peter argues that the ALJ's evaluation about whether his impairments met

or medically equaled a listing, alone or in combination, is without substantial

evidentiary support because his medical condition changed so dramatically that the

ALJ was required to obtain expert medical opinion to make a decision at step three.

---

[2]     Ostomastoiditis is an infection of the air cells in the middle ear and is usually caused by a bacteria.  *See https://www.webmd.com/cold-and-flu/ear-infection/mastoiditis-symptoms-causes-treatments#1.*

He also argues that the RFC determination is flawed because of the deterioration of his medical condition and because the ALJ failed properly to credit the opinion of a treating physician regarding Peter's manipulation abilities.

The court agrees with Peter that the medical evidence of record changed so substantially between the time it was reviewed by agency physicians in April and June 2014 and its evaluation by the ALJ in 2016 that the ALJ's determination that Peter was not disabled is improperly grounded on the ALJ's "playing doctor," rather than on appropriate medical expert opinion. A comparison of the medical review by the state agency physicians in 2014 with the "medical" review by the ALJ demonstrates the absence of *any* expert medical evaluation of *all* of Peter's severe impairments, except his back problems.

The state agency physicians' medical review of the evidence was very limited. Their reports on initial review and reconsideration review show that the only medical evidence in the file at the time of these reviews was a one-page handwritten report from a medical appointment in December 2013 (R. 719), the consultative physical examination report from an examination on April 1, 2014, conducted at the behest of the Social Security Administration (R. 886-890), and a group of records from St. Elizabeth Hospital (*see* R. 424). From these sparse records, the reviewing physicians identified one diagnosed impairment—spine disorders—and found that no other impairment was established. (R. 425). The reviewing physicians opined about Peter's RFC based on these records, and found that because of spine disorders in the thoracic and lumbar spines shown by MRIs in 2014 and based on the findings

from the one-time physical examination in April 2014, Peter is capable of light work with certain postural limitations (only occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramp/stairs), but otherwise has no limitations.

In contrast and with the benefit of hundreds of additional pages of medical records, the ALJ identified several additional, and very serious, impairments affecting additional body systems. Those included cerebral vascular incident, epilepsy, lupus, carpal tunnel syndrome, sleep apnea, hearing problems, and obesity. (R. 24). And while the ALJ appears to have fairly painstakingly summarized the medical evidence of these various, new impairments identified in his review, he was required under the circumstances of this case to obtain expert medical opinion. The new medical evidence included history of multiple strokes, brain MRIs and CT scans, and strokes or stroke-like symptoms over a lengthy period (including in late 2010, June 2013, November 2014, January 2015, and November 2015). The new medical evidence included nerve-conduction studies leading to the diagnosis of carpal tunnel syndrome. The evidence included Peter's physician's prescription of a wheelchair because of his back issues and problems with grip strength, apparently affecting his ability constantly to use a cane while walking or standing. The evidence included "complete" neurocognitive testing and other testing regarding the effects of Peter's ear problems on balancing and dizziness. Indeed, approximately 90% (if not more) of the relevant medical evidence the ALJ described in his decision (R. 27-33) was never reviewed by agency physicians.

These records deserved "medical scrutiny," and not merely the review of an

ALJ.   This is not a case where the additional medical evidence could be classified as

akin to more of the same that agency physicians had previously reviewed.  Instead,

it is like that described by the Seventh Circuit as the kind of "new and potentially

decisive medical evidence" that has never undergone medical scrutiny. *Goins v.*

*Colvin,* 764 F.3d 677, 680 (7th Cir. 2014) (faulting the ALJ's failure to submit an

MRI "to medical scrutiny, as she should have done since it was new and potentially

decisive medical evidence"); *Kaminski v. Berryhill,* 894 F.3d 870, 875 (7th Cir. 2018)

(ALJs must rely on expert opinions about the significance of medical findings rather

than rely on their own determinations); *Moreno v. Berryhill,* 882 F.3d 722, 728 (7th

Cir. 2018) (ALJ should not rely on an outdated assessment if later evidence

containing new, significant medical diagnoses reasonably could have changed the

reviewing physician's opinion).

Peter's neurological impairments, including the effects of his strokes,

epileptic incidents, ear problems, lupus, and his carpal tunnel syndrome—along

with his spinal condition (and the possible continued deterioration of his disc

condition)—require review by a medical expert to provide substantial evidentiary

support for a decision about whether any listing is met or medically equaled and

about an appropriate RFC.  The court must reverse and remand on this basis.

On remand, the ALJ should reconsider his evaluation of the opinion of Peter's

treating doctor (Dr. Fischer) in light of the updated medical review.  The court does

find that, as the Commissioner argues, the treating doctor's opinion is so internally

inconsistent about Peter's abilities that there is substantial support for the ALJ's decision to give it little weight.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the Commissioner's decision under sentence four of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure.  Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated: August 20, 2018

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana